**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| MARCOS JESUS SILVA, | ) | NO. SA CV 18-1244-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | **AND ORDER OF REMAND** |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied, and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on July 17, 2018, seeking review of the Commissioner's denial of benefits. The parties consented to proceed before a United States Magistrate Judge on August 14, 2018. Plaintiff filed a motion for summary judgment on November 21, 2018.

Defendant filed a motion for summary judgment on December 27, 2018. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed July 20, 2018.

**BACKGROUND**

Plaintiff asserts disability since December 27, 2013, based on, inter alia, alleged pain and weakness from lower back and neck problems, fibromyalgia and osteoarthritis (Administrative Record ("A.R.") 202-07, 220, 464, 477, 558-66, 583, 896, 900, 908). The Court previously remanded Plaintiff's disability claim for further administrative consideration of the opinion of one of Plaintiff's treating physicians, Dr. Murali Raju. See A.R. 655-62 (Memorandum Opinion and Order of Remand and Judgment filed on August 17, 2016, in Silva v. Commissioner, SA CV 16-441-E (the "Prior Action")); see also A.R. 448-51 (Dr. Raju's opinion). As the Court pointed out in the Prior Action, Dr. Raju had opined that Plaintiff's lumbar degenerative disc disease limits Plaintiff to standing and walking no more than four hours in an eight hour workday and would cause Plaintiff to be absent from work approximately twice per month. See id. The Court did not reach any other issue then raised except to find that reversal with a directive for the immediate payment of benefits would not be appropriate (A.R. 662, n.2).

The Appeals Council subsequently vacated the Commissioner's final decision and remanded the case to an Administrative Law Judge ("ALJ") for further proceedings consistent with this Court's order (A.R. 683). The Appeals Council also instructed the ALJ to consolidate Plaintiff's

claim with a subsequent claim for benefits filed on April 6, 2015 (id.).

On remand, a new ALJ reviewed the record and heard testimony from Plaintiff and a vocational expert (A.R. 464-78, 546-96). Plaintiff testified to pain and limitations of allegedly disabling severity (A.R. 555-73). The ALJ found that Plaintiff has "severe" degenerative disc disease of the cervical and lumbar spine with neural foraminal narrowing and facet arthropathy, mild cerebral atrophy, fibromyalgia, arthritis, osteoarthritis of the hip, post-concussive syndrome, chronic headaches, disorder of the sacrum, obesity, bibasilar atelectasis with trace right pleural effusion, hepatic steatosis (mildly enlarged liver), depression, and post-traumatic stress disorder ("PTSD") (A.R. 467). The ALJ found that Plaintiff retains a residual functional capacity for light work limited to: (1) occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; (2) no climbing of ladders, ropes or scaffolds; (3) tasks with a reasoning level of 2 or less; (4) occasional direct public contact; and (5) low stress jobs defined as having only occasional decision-making duties and changes in the work setting. See A.R. 469-76 (rejecting Plaintiff's allegations as "not entirely consistent with the medical evidence and other evidence in the record," and giving "greatest weight" to non-examining state agency physician opinions and "least weight" to Dr. Raju's opinion). The ALJ deemed Plaintiff capable of performing work as a "marker," "power screwdriver operator," and "housekeeping cleaner," and, on that basis, denied disability benefits through September 19, 2017 (A.R. 477-78 (adopting vocational expert testimony at A.R. 577-78)).

In analyzing Plaintiff's residual functional capacity, the ALJ did not even mention Dr. Raju's opinion that Plaintiff would be absent from work two times per month (A.R. 475-76).  Plaintiff submitted "exceptions" to the Appeals Council, arguing, <u>inter alia</u>, that the ALJ failed properly to consider Plaintiff's subjective complaints and Dr. Raju's opinions (A.R. 931-36).  The Appeals Council considered the exceptions but denied review, discerning no reason to assume jurisdiction (A.R. 454).  The Appeals Council refused to "consider and exhibit" new evidence Plaintiff had submitted, finding that the evidence assertedly did not show a reasonable probability of a different outcome (A.R. 454).  The Appeals Council also found not relevant certain newly submitted records postdating the ALJ's decision (A.R. 454).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards.  <u>See</u> <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1159 (9th Cir. 2008); <u>Hoopai v. Astrue</u>, 499 F.3d 1071, 1074 (9th Cir. 2007); <u>see also</u> <u>Brewes v. Commissioner</u>, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation and quotations omitted); <u>see also</u> <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006).

///

> If the evidence can support either outcome, the court may
> not substitute its judgment for that of the ALJ. But the
> Commissioner's decision cannot be affirmed simply by
> isolating a specific quantum of supporting evidence.
> Rather, a court must consider the record as a whole,
> weighing both evidence that supports and evidence that
> detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

**DISCUSSION**

After consideration of the record as a whole, the Court reverses the Administration's decision in part and remands the matter for further administrative proceedings. As discussed below, the Administration materially erred in evaluating the evidence of record.

**I.    Summary of the Medical Record.**

The available medical record dates back to May of 2013 (A.R. 293-302). At that time, Plaintiff presented to the emergency room for lower extremity pain and weakness radiating from the low back (id.). Plaintiff associated these problems with a 1994 work-related injury for which Plaintiff had been treated until 1997 (id.). Plaintiff did not then have health insurance or a primary care physician (A.R. 294).
///
///

The record following that first emergency room visit reflects consistent complaints of radiating back pain and findings of degenerative disease in the lumbar and cervical spine.  See, e.g., A.R. 291, 294, 321, 325-26, 330, 345, 354, 373, 379, 389, 401, 411, 422, 426, 428, 443, 941, 945, 1238, 1431, 1433, 1435, 1554, 1624, 1626, 1829, 1836, 1839, 1842, 1846, 1857, 1861, 1864, 2070, 2114 (Plaintiff's complaints); see also A.R. 301-02 (May, 2013 lumbar spine CT scan showing degenerative changes, disc space narrowing at L4-L5 and L5-S1, and facet joint arthropathy); A.R. 361-62 (March, 2014 lumbar spine MRI showing multilevel degenerative disc disease and facet arthropathy most significant at L4-L5, where there is mild to moderate neural foraminal narrowing and central canal stenosis without impingement, and mild fatty atrophy of the paraspinal musculature); A.R. 1148-49 (April, 2015 lumbar spine MRI showing moderate to severe facet arthrosis and ligamentous flavum hypertrophy at L4-L5, minimal anterolisthesis of L4 on L5, moderate stenosis of the right neural foramen and right lateral recess, moderate facet arthrosis at L5-S1, and minimal anterolisthesis of L5 - S1); A.R. 1156-57 (December, 2015 lumbar spine x-ray showing narrowing disc space at L5-S1, facet arthritis at L4-L5 and L5-S1, lumbar spondylosis at L3-L4, generalized osteopenia, and a wedge deformity at T12); A.R. 1763-64 (August, 2016 lumbar spine MRI showing moderate degenerative disc disease and facet spondylosis from L3-L4 through L5-S1, bilateral lateral recess narrowing at L4-L5, moderate L3-L4 through L5-S1 bilateral neural foraminal narrowing, and unchanged minimal anterolisthesis of L5 on S1); A.R. 416 (October, 2014 cervical spine x-rays showing mild degenerative changes); A.R. 1330-31 (March, 2015 cervical spine MRI showing mild multilevel degenerative disc disease with mild to

moderate narrowing of the spinal canal from C3-C7); A.R. 1761-63
(August, 2016 cervical spine MRI showing congenital narrowing of the
spinal canal mainly at C4-C5, mild degenerative changes, mild to
moderate canal stenosis at C5-C6 and mild spinal canal stenosis at C4-
C5, and mild to moderate left neural foraminal stenosis at C5-C6).
Plaintiff reportedly has used a cane for ambulation since February of
2013 due to weakness and pain in the right leg (A.R. 295, 345-46, 391,
945, 1201, 1208, 1225, 1238, 1690, 1693, 1818-19, 1857, 1981, 1994,
2011, 2016, 2019, 2038, 2054, 2068).

Plaintiff began regular treatment at LAC-USC Medical Center in
June of 2013 for alleged back and knee pain (A.R. 320-42).
Plaintiff's doctor reviewed the May, 2013 lumbar spine CT scan and
noted on examination that Plaintiff had tenderness in the lumbar area
and both knees, and an unstable gait without an assistive device (A.R.
320-21). Plaintiff was prescribed Ultram (Tramadol), ordered to avoid
heavy lifting, and referred for an orthopedic evaluation (A.R. 321-
22). In January of 2014, Plaintiff's doctor reportedly completed a
General Relief "disability" form for disability through April of 2014
(A.R. 372-73). This form is not in the record.

Consultative examiner Dr. Ibrahim Yashruti prepared a complete
orthopaedic evaluation dated February 7, 2014 (A.R. 345-50).
Plaintiff complained of burning, throbbing, dull and sharp back pain,
bilateral hip and knee pain, chest pain, weakness in the legs
aggravated by sitting, standing, walking, bending and lifting,
dizziness, nausea and problems controlling his bladder (A.R. 345).
Plaintiff reported injuring his back in 1994 while lifting a patient

(A.R. 345).  Plaintiff reportedly had been using a cane constantly since February of 2013, stating that he could not walk without the cane (A.R. 345-46).  Plaintiff was taking Tramadol, Ranitidine, Ibuprofen and Methocarbamol (A.R. 345).

On examination, Plaintiff had limited range of motion in the cervical spine, tenderness and limited range of motion in the lumbosacral spine, "popping" in the low back upon palpation of the knees, and positive straight leg raising, with limited effort reported on several tests (A.R. 346-49).  X-rays showed mild healed compression at T12 and "very mild" scoliosis of L5-S1 (A.R. 349).[1]  Dr. Yashruti opined that Plaintiff had no orthopedic findings to justify Plaintiff's movements and reaction to examination, and that Plaintiff could ambulate without a cane (A.R. 350).  Dr. Yashruti found Plaintiff capable of medium work (i.e., lifting 50 pounds occasionally, 25 "degrees" (pounds) occasionally, standing and walking six hours a day, sitting six hours a day, with frequent squatting, kneeling, crouching and crawling, and no limitations in reaching with his arms and manipulating with his hands) (A.R. 350).  Dr. Yashruti stated that Plaintiff would benefit from a neurologic evaluation (A.R. 350).

Plaintiff thereafter presented to the UC Irvine Emergency Department in March of 2014 for back pain (A.R. 354-59, 361-62, 378-87).  A lumbar spine MRI showed multilevel degenerative disc disease and facet arthropathy most significant at L4-L5, where there

---

[1]     It appears that Dr. Yashruti did not review Plaintiff's May, 2013 lumbar spine CT scan.

was mild to moderate neural foraminal narrowing, with lateral recess narrowing and central canal stenosis without impingement, and mild fatty atrophy of the paraspinal musculature (id.).  Plaintiff was prescribed acetaminophen-hydrocodone and ordered to follow up with his primary doctor (A.R. 354).

Dr. Josephina Choa of AltaMed regularly treated Plaintiff from May of 2014 through at least July of 2015 (A.R. 389-94, 418-41, 1014-69, 1318-23).  Dr. Choa diagnosed, inter alia, obesity, PTSD, lumbar disc disease, neck pain, chronic radiculopathy, urinary incontinence and memory loss, and referred Plaintiff to various specialists (A.R. 389, 392, 420, 429, 440-41, 1034, 1322).

One of those specialists was neurosurgeon Dr. Raju, who evaluated Plaintiff in July of 2014 (A.R. 411-14).  Plaintiff complained of progressively worsening back pain, radiating down both legs with associated numbness and tingling and bladder incontinence (A.R. 411). Dr. Raju reviewed Plaintiff's lumbar spine MRI and noted on examination that Plaintiff had decreased range of motion in his back due to pain, but a gait and station "within normal limits" (with no mention of whether Plaintiff was using a cane) (A.R. 411-12).  Dr. Raju assessed lumbago and degeneration of the lumbar or lumbosacral intervertebral disc, with a note to consider facet blocks for Plaintiff's facet arthropathy and degenerative changes (A.R. 412). Dr. Raju referred Plaintiff to a pain management doctor and suggested follow up after the facet blocks (A.R. 413).
///
///

Plaintiff saw pain management specialist Dr. Kais Alsharif in September of 2014 (A.R. 401-08). Plaintiff reported a history of progressive, daily, constant back pain for over 20 years, worse with physical activity, prolonged walking or standing, radiating down his legs with intermittent numbness and tingling and weakness in the legs (A.R. 401). Plaintiff said Norco and Tramadol gave him nausea and dizziness (A.R. 401). Plaintiff also said that he then was taking Tramadol, Ibuprofen and Robaxin, and that he had not had surgery or injections (A.R. 401). On examination, Plaintiff reportedly had tenderness in the lumbar spine, positive facet loading, positive straight leg raising tests, positive Faber test, negative Waddell's sign, and a normal gait (with use of a cane) (A.R. 402). Dr. Alsharif reviewed Plaintiff's lumbar spine MRI and assessed lumbar facet syndrome, lumbar spondylosis, lumbar degenerative disc disease, lumbar radiculitis and disorders of the sacrum (A.R. 403). Dr. Alsharif opined that Plaintiff's presentation was consistent with lumbar radiculopathy, facet arthropathy and sacroiliac dysfunction (A.R. 403). Dr. Alsharif prescribed Tylenol #3 and recommended a bilateral S.I. (sacroiliac) injection (A.R. 403-04). Plaintiff returned on September 30, 2014, for a bilateral sacroiliac joint epidural steroid injection (A.R. 405-08).

Dr. Raju completed a one-page General Relief "Report of Examination" form dated September 30, 2014 (A.R. 414). This form stated that Plaintiff had lumbar degenerative disc disease with severe pain since 1994, which was considered permanent, and rendered Plaintiff unsuitable for any employment, with the following specific limitations: "no lifting, prolonged sitting or walking" (A.R. 414).

Plaintiff returned to Dr. Alsharif in December of 2014, reporting that Tylenol #3 was helping his pain but also reporting that the improvement he received from the sacroiliac injection lasted only one week (A.R. 994). Plaintiff then was taking Tylenol #3 and Robaxin (A.R. 995). Findings on examination were unchanged from the prior examinations (A.R. 995). Dr. Alsharif continued Plaintiff's medications and gave Plaintiff a L5-S1 epidural injection (A.R. 996-98).

Plaintiff followed up with Dr. Raju in January of 2015 (A.R. 1624-25). Plaintiff reported improving back pain but persistent neck pain, and stated that his symptoms were unchanged despite having epidural steroid injections since his last visit with Dr. Raju (A.R. 1624). On examination, Plaintiff reportedly had normal strength and was able to ambulate without assistance (A.R. 1624). There is no indication whether Plaintiff then was using a cane (A.R. 1624). Dr. Raju assessed cervicalgia, indicated that Plaintiff should continue with his series of epidural steroid injections, and referred Plaintiff for physical therapy and a cervical spine MRI (A.R. 1624-25).

Dr. Raju completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" form dated January 12, 2015 (A.R. 448-51). Dr. Raju opined that Plaintiff could frequently lift and carry up to 20 pounds, sit for two hours at one time without interruption, stand for two hours at one time without interruption, walk for two hours at one time without interruption, for a total of six hours sitting in a workday and four hours standing/walking in a workday (A.R. 448-49). Dr. Raju opined that Plaintiff could

occasionally stoop, crouch, kneel and crawl, never climb, frequently balance, and occasionally push and pull depending on the weight (A.R. 450). Dr. Raju further opined that Plaintiff could not work in environments with unprotected heights, moving machinery, exposure to marked changes in temperature and humidity, or dust, fumes and gases, and would have "mild" restrictions in driving due to Plaintiff's narcotic medications (A.R. 451). Dr. Raju opined that Plaintiff would likely miss work "[a]bout twice a month" due to his condition (A.R. 451).

Plaintiff returned to Dr. Alsharif in March of 2015, reporting significant improvement for only approximately two weeks from the L5-S1 injection but also saying that his pain was controlled with medication (A.R. 1109). Examination findings were unchanged (A.R. 1110-11). Dr. Alsharif continued Plaintiff's medications without giving any additional injections (A.R. 1111).

When Plaintiff returned to Dr. Raju later in March of 2015, Plaintiff reported no improvement in his neck and low back pain since the last visit with Dr. Raju (A.R. 1626). Plaintiff reported that he had completed the series of epidural steroid injections with "mild improvement" for only 1.5 weeks, and had attended one physical therapy session without improvement (A.R. 1626). Examination results were unchanged (A.R. 1627). Dr. Raju reviewed Plaintiff's March, 2015 cervical spine MRI, which showed mild multilevel degenerative disc disease with mild to moderate narrowing of the spinal canal from C3-C7 (A.R. 1330-31), and "[d]iscussed with patient about continued follow-up with pain management for conservative treatment options, and

continuing with [physical therapy]" (A.R. 1627).[2]

In April of 2015, Plaintiff consulted with orthopedic surgeon Dr. Adam Holleran, who reviewed Plaintiff's March, 2015 cervical spine MRI (A.R. 941-43). On examination, Plaintiff reportedly had mild loss of cervical and lumbar lordosis, moderate tenderness to palpation of the cervical and lumbar spine, muscle spasm, limited range of motion with pain, but intact sensation and strength (A.R. 942). Dr. Holleran diagnosed cervical and lumbar degenerative disc disease, requested a lumbar spine MRI, prescribed Meloxicam, and referred Plaintiff for pain management and physical therapy, with a note to return as needed (A.R. 943).[3]

///

///

_____

[2]     Consultative neurologist Dr. Nancy Vu evaluated Plaintiff in March of 2015 (A.R. 945). Plaintiff complained of chronic daily diffuse and frontal headaches following a history of multiple concussions, depression, poor balance, back problems with bilateral leg numbness, pain, weakness, obesity, homelessness, tinnitus, dizziness, vertigo and an unsteady gait requiring a cane (A.R. 945). On examination, Plaintiff reportedly was anxious, tense but cooperative, depressed with slight inattention, had mild proximal leg weakness, and ambulated slowly with a cane (A.R. 945). Dr. Vu diagnosed post concussion syndrome, chronic headaches, and assessed a history of depression and poor memory with "?" re psychosis (A.R. 945). Dr. Vu ordered a brain CT scan which showed mild cerebral atrophy (A.R. 945-47). Plaintiff returned for follow up in May and August of 2015 with no reported changes (A.R. 1125-28).

[3]     As summarized above, Plaintiff's April, 2015 lumbar spine MRI showed moderate to severe facet arthrosis and ligamentous flavum hypertrophy at L4-L5, minimal anterolisthesis of L4 on L5, moderate stenosis of the right neural foramen and right lateral recess, moderate facet arthrosis at L5-S1, and minimal anterolisthesis of L5 on S1 (A.R. 1148-49).

Plaintiff returned to Dr. Alsharif in June of 2015, reporting no changes (A.R. 1105-08).  Dr. Alsharif continued Plaintiff's medications with a note that a consultation with a spine surgeon (Dr. Massoudi) was pending (A.R. 1107).  It appears that Plaintiff did not consult with another surgeon until 2016.  In March of 2016, neurological surgeon Dr. Peyman Tabrizi examined Plaintiff, later reviewed Plaintiff's April, 2016 lumbar spine MRI,[4] and recommended against any surgical intervention in favor of "continued conservative management" with physical therapy and possible rheumatology evaluation and treatment for arthritis (A.R. 1521-22).

In October of 2015, Plaintiff began regular treatment with Dr. Rye-Ji Kim and others at UC Irvine Health, after Plaintiff presented to the UC Irvine emergency room in September of 2015 for neck, back and right leg pain (A.R. 1227-40, 1981-2142).  Dr. Kim reviewed Plaintiff's March, 2014 lumbar spine MRI, and referred Plaintiff for pain management, orthopedic, urologic, and neurologic surgery consultations, and a psychiatry consultation (A.R. 1163, 1229-30).

///

///

---

[4]    The April, 2016 lumbar spine MRI does not appear to be in the record.  According to Dr. Tabrizi, this MRI showed evidence of L2 hemangioma, L3-L4 disc dessication with a 1-mm disc bulge and mild to moderate facet hypertrophy bilaterally, mild bilateral neural foraminal stenosis, L4-L5 moderate to severe facet arthrosis with ligamentum flavum hypertrophy and minimal anterolisthesis of L4 and L5, moderate stenosis of the right neural foramen and mild left neural foraminal stenosis, L5-S1 dessication with subtle anterolisthesis of L5 over S1, and moderate facet hypertrophy bilaterally causing moderate bilateral neural foraminal stenosis.  See A.R. 1521.

Plaintiff was treated by the Pain Medicine Specialty Group monthly from December of 2015 through at least January of 2017 (A.R. 1426-50, 1554-61, 1574-75, 1815-47).  Plaintiff reported chronic neck, low back and leg pain radiating to the upper and lower extremities, aggravated by prolonged sitting, standing, walking, lifting, bending and driving (A.R. 1435).  Plaintiff also reported that lumbar epidural injections had provided short term relief only and that Tylenol with codeine prescribed by his pain doctor was not helpful (A.R. 1435).  On examination, Plaintiff reportedly had tenderness in the paraspinal muscles, positive facet maneuver, and no sensory deficits (A.R. 1436).  Plaintiff was assessed with lumbar and cervical radiculopathy, and prescribed Norco and Gabapentin (A.R. 1432, 1434, 1436-37).  By February of 2016, Plaintiff reported that his pain medications were not effective and Plaintiff refused any further injections, so his Norco dose was increased and he was given a Lidoderm patch (A.R. 1428-29).  In March of 2016, Plaintiff reported that the Lidoderm patch was working well and his pain was controlled with medications (A.R. 1426).  In April and May of 2016, Plaintiff's pain reportedly was stable on his medications (A.R. 1556, 1560).  From June through October of 2016, Plaintiff reported neck pain radiating to his bilateral upper extremities, low back pain radiating to the bilateral lower extremities, and no desire for any spine injections or surgery (A.R. 1554, 1836, 1839, 1842, 1846).  Examination results were unchanged and his medications were continued (A.R. 1554-55, 1836-37, 1839-40, 1842-43, 1846-47).  In December of 2016, Plaintiff reported that he had slipped and hurt his right hip two weeks earlier and he was still having pain with walking (A.R. 1829).  A hip x-ray was ordered and his medications were continued (A.R. 1829-30).  When

Plaintiff returned in January of 2017, he reported that his right hip was still hurting (A.R. 1826).  A right hip x-ray showed osteoarthritis and mild osteopenia (A.R. 1826, 1870-71).  Plaintiff's medications were continued (A.R. 1827).

Meanwhile, Plaintiff presented to Dr. David Kilgore at UC Irvine Health in December of 2015 for an "Integrative Medicine Consultation" (A.R. 1198-1207).  On examination, Plaintiff reportedly had difficulty rising from a chair, ambulated slowly with a cane, had a kyphotic posture, positive straight leg raising tests, limited range of motion, multiple myofascial trigger points, and was unable to stand completely erect (A.R. 1201).  Dr. Kilgore assessed chronic neck and low back pain, degenerative disc and facet arthritis, depression, pre-diabetes, obesity, chronic urge urinary incontinence, and possible multi-trauma early onset dementia with CT scan evidence of cerebral atrophy (A.R. 1202).

Plaintiff returned to Dr. Kilgore in March of 2016 for follow up (A.R. 1178-89).  Plaintiff reportedly had undergone "conservative" treatment including medication, physical therapy and epidural injections with decreased activity and without sustainable improvements to pain function or quality of life (A.R. 1179).  Plaintiff was using Lidocaine patches, Hydrocodone and Gabapentin for pain, using a cane to walk, and was taking Abilify, Sertraline and Mirtazapine for depression (A.R. 1178, 1180-84).  Plaintiff was homeless (A.R. 1178, 1180).

///

///

Consulting neurologist Dr. Mark Farag evaluated Plaintiff in June of 2016 for short and long term memory issues dating back to a bicycle accident in 2008 or 2009 (A.R. 1712-16). On examination, Plaintiff reportedly had a Mini Mental Status Examination ("MMSE") score of 29/30, with 2/3 recall, and a narrow base gait with cane assistance (A.R. 1713-14). Dr. Farag reviewed Plaintiff's lumbar spine MRI and brain CT scan, and opined that Plaintiff was experiencing normal variations in mental status and attention, given Plaintiff's ability to take care of himself and navigate travel and government systems without assistance, opining that any primary neurological disorder is at an "imperceptibly early stage" (A.R. 1715).

Consulting rheumatologist Dr. Sarah Hwang evaluated Plaintiff in August and September of 2016 (A.R. 1772-81). Examination revealed swelling and/or tenderness in fingers, elbows, cervical and lumbar spine, knees, ankles and feet and positive trigger points (A.R. 1774). Dr. Hwang assessed obesity, fibromyalgia and depression, as well as spinal stenosis (A.R. 1775). Dr. Hwang found no evidence of rheumatoid arthritis (A.R. 1780).

Consulting neurologist Dr. Jack Lin evaluated Plaintiff in December of 2016 (A.R. 1818-24). Plaintiff reported episodes of brain "fogginess" and intermittent forgetfulness, but no loss of functioning from the prior neurological evaluation (A.R. 1818). Plaintiff's MMSE score was 28/30 and his recall was 2/3 (A.R. 1819). Plaintiff again was noted to have a narrow base gait with cane assistance (A.R. 1819). Dr. Lin found it unlikely that Plaintiff is suffering from a neurocognitive disorder but referred Plaintiff for a more complete

memory workup (A.R. 1821).

Plaintiff consulted in March and June of 2017 with neurologist Dr. Chuang Kuo Wu for memory issues (A.R. 1999-2004, 2091-98).  An April, 2017 brain MRI showed no acute lesions but mild cerebral cortical atrophy (A.R. 2000, 2061).  A May, 2017 EEG study was normal (A.R. 2054-55).  Dr. Wu assessed memory loss and possible mild neurocognitive disorder (A.R. 2001).[5]

State agency physicians reviewed Plaintiff's claim while the Prior Action was pending and found Plaintiff capable of light work as of May of 2016 (A.R. 628-49).  However, the state agency physicians did not review Dr. Raju's January, 2015 opinion stating that Plaintiff had greater limitations and would be absent from work twice each month.  See A.R. 633, 644, 647 (state agency physicians indicating that there was no opinion evidence for review).  State agency physicians reconsidered Plaintiff's claim in September of 2016 – after this Court's remand order in the Prior Action but before the Appeals

_____

[5]    The record also contains a "Mental Assessment" form dated August 8, 2017, by Sandra P. Klein, Ph.D.  (A.R. 2151-55).  There are no treatment notes from Dr. Klein.  Dr. Klein diagnosed an "unspecified neurocognitive disorder" based on the presence of cerebral atrophy, depression, chronic neck and low back pain, and possible post-multi-trauma early dementia (A.R. 2154).  Dr. Klein opined that Plaintiff has various limits in his understanding and memory, concentration and persistence, social interaction and adaptation (A.R. 2151-54).  Dr. Klein explained, "Mr. Marcos Silva exhibits impaired sustained & divided attention ability.  This undermines most other cognitive domains and exacerbates his previous limited cognitive ability.  Chronic pain and depression contributes [sic] to an inability to problem solve, make decisions, remember detailed instructions, and follow-through on completing tasks at hand.  Physical limitations also contribute to an inability to perform tasks normally." (A.R. 2155).

Council remanded the case (A.R. 655-62, 683).  At that time, the state
agency physicians again found Plaintiff capable of light work and
again failed to acknowledge Dr. Raju's opinion.  <u>See</u> A.R. 663-79
(stating there was no opinion evidence for review).

## II.  <u>Summary of Plaintiff's Testimony and Statements.</u>

At the most recent administrative hearing in August of 2017,
Plaintiff testified that he received government relief and lived in
his car (A.R. 550-51).  Plaintiff said that in 1989, he and his
brother walked in on a robbery and were shot.  Plaintiff was shot five
times, causing him to lose 60 percent of his feeling on his left side,
and his brother was shot once, leaving his brother a paraplegic (A.R.
555-56).

Plaintiff complained of daily neck pain radiating to his lower
back, head and arms following several car accidents, pain and weakness
in his arms and hands following a bicycle accident, difficulty
breathing upon bending due to fractured ribs that did not heal
correctly, trouble gripping his walking cane, daily mid-back pain
radiating down to his legs aggravated by walking, sitting and lying
down, leg pain and weakness, and knee pain from several falls
radiating down to his foot aggravated by walking and standing, worse
on the right side than the left (A.R. 558-65).  Plaintiff said that he
has used a cane constantly since 2012 on his right side because he has
problems balancing and has fallen, and he does not want to put all his
weight on his right knee (A.R. 565-68).  Plaintiff estimated that he
could stand for five minutes without a cane but insisted he would need

the cane when he moves (A.R. 568).  Plaintiff said when he tries to
walk without a cane he drags his feet and stumbles (A.R. 568).
Plaintiff said that he suffers back pain from sitting continuously and
must either lie down or move around to relieve the pain (A.R. 568-69).
Plaintiff estimated that he could sit continuously for 30 minutes
(A.R. 569).  Plaintiff said that he lies down for 15 to 20 minutes
every hour during a typical day (A.R. 570).  Plaintiff could take the
bus to his brother's house to shower and get his mail (A.R. 570-71).
Plaintiff said he has trouble sleeping, feels depressed, has problems
concentrating and thinking, and cannot remember what he reads (A.R.
555, 572-73).

In a Function Report form dated in April of 2016, Plaintiff
reported that he was homeless, ate two "ready made" meals a day, took
public transportation, shopped 10 to 15 minutes a day for food, and
tried to take short walks and exercise if possible (A.R. 879-81).
Plaintiff reported that he had trouble bending, stooping, sitting,
standing and walking, that rheumatoid arthritis in his hands made it
hard to care for his hair or shave or hold things,[6] and that he had
trouble with his concentration and memory and getting along with
others (A.R. 879, 882-83).  Plaintiff reported that he walked with a
cane and could walk 200 feet before needing to rest up to 30 minutes
///
///
///

_____

[6]  This Function Report predates Plaintiff's rheumatology
examination, where he was found to have swelling and tenderness
in his fingers and assessed with fibromyalgia (A.R. 1777-80).

1  (A.R. 883-84).[7]

2

3  **III.  The ALJ Erred in Discounting Plaintiff's Testimony and Statements**

4        **Regarding the Severity of Plaintiff's Symptoms Without Stating**

5        **Legally Sufficient Reasons for Doing So.**

6

7         Where, as here, an ALJ finds that a claimant's medically

8  determinable impairments reasonably could be expected to cause some

9  degree of the alleged symptoms of which the claimant subjectively

10  complains, any discounting of the claimant's complaints must be

11  supported by "specific, cogent" findings.  See Berry v. Astrue, 622

12  F.3d 1228, 1234 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834

13  (9th Cir. 1995); but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th

14  Cir. 1996) (indicating that ALJ must state "specific, clear and

15  convincing" reasons to reject a claimant's testimony where there is no

16

17  _____

18         [7]    In a Function Report form from December of 2013, when
    Plaintiff was not homeless, Plaintiff reported that on a typical
19  day he woke up, ate, showered, took his medications, tried to
    read, watched television, listened to the radio, took a short
20  walk if he could, and made a sandwich for lunch (A.R. 239).
    Plaintiff reportedly could make sandwiches and canned soup,
21  drive, and shop in stores for 30 minutes (A.R. 241-42).
    Plaintiff reportedly did not go to places where he has to sit,
22  stand or walk for prolonged times (A.R. 244).  Plaintiff
    indicated that he had trouble lifting, could walk one block or
23  less before needing to rest for 15 minutes or more, needed a cane
    for assistance when he walked, and could pay attention for five
24  to 10 minutes (A.R. 244-45).  Similarly, in an undated Pain
    Questionnaire, Plaintiff reported that he could only do minimal
25  walking, driving and shopping, and no household chores, but he
    could make cold sandwiches and warm soups in the microwave (A.R.
26  228-29).  Plaintiff reported that he could walk less than one
    block, stand for five to 10 minutes, and sit for 15 to 30 minutes
27  at a time (A.R. 229).

28

evidence of malingering).[8] Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (internal citations and quotations omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen v. Chater, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); see also Social Security Ruling 16-3p (eff. March 28, 2016).[9]

///

///

---

[8] In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard. See, e.g., Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Treichler v. Commissioner, 775 F.3d 1090, 1102 (9th Cir. 2014); Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014); see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases). In the present case, the ALJ's findings are insufficient under either standard, so the distinction between the two standards (if any) is academic.

[9] Social Security Rulings ("SSRs") are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). SSR 16-3p superseded SSR 96-7p, but may have "implemented a change in diction rather than substance." R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016); see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (suggesting that SSR 16-3p "makes clear what our precedent already required").

Here, the ALJ discounted Plaintiff's testimony and statements as "not entirely consistent with the medical evidence and other evidence in the record" (A.R. 473-74). The ALJ stated: (1) Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms on his ability to ambulate assertedly were inconsistent with the objective medical evidence; (2) the degree of Plaintiff's subjective complaints assertedly was "not comparable" to the "conservative" treatment Plaintiff sought; (3) Plaintiff's activities of daily living (e.g., taking nightly walks, using public transportation and shopping in stores for food) assertedly were inconsistent with Plaintiff's alleged limitations; and (4) Plaintiff's alleged memory loss assertedly was "inconsistent" with the objective medical record (A.R. 474-75).

With regard to the second stated reason, a limited course of treatment sometimes can justify the rejection of a claimant's testimony, at least where the testimony concerns physical problems. See, e.g., Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack of consistent treatment, such as where there was a three to four month gap in treatment, properly considered in discrediting claimant's back pain testimony); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (in assessing the credibility of a claimant's pain testimony, the Administration properly may consider the claimant's failure to request treatment and failure to follow treatment advice) (citing Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)); Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993) (permissible credibility factors in assessing pain testimony include limited treatment and minimal use of medications); see also Johnson v. Shalala, 60 F.3d

23

1428, 1434 (9th Cir. 1995) (absence of treatment for back pain during half of the alleged disability period, and evidence of only "conservative treatment" when the claimant finally sought treatment, sufficient to discount claimant's testimony).

In the present case, however, it is highly doubtful Plaintiff's treatment accurately may be characterized as "conservative" within the meaning of Ninth Circuit jurisprudence (even though Plaintiff's doctors sometimes used the term "conservative" to reference any treatment not involving surgery, see A.R. 1521, 1627). As detailed above, the record shows that Plaintiff regularly sought treatment from several providers throughout the alleged disability period, followed up as ordered and complied with all non-surgical treatment suggestions, including physical therapy, narcotic pain medication and multiple epidural injections.[10] Although doctors have not recommended surgery for Plaintiff's lumbar spine, Plaintiff's treatment does not appear to have been "routine" or "conservative," as those terms are employed in case law. See, e.g., Childress v. Colvin, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014) ("[i]t is not obvious whether the consistent use of [Norco] (for several years) is

_____

[10]    While Plaintiff reported in March of 2015 to Dr. Alsharif that medications controlled his pain (A.R. 1109), Plaintiff reported to Dr. Raju that same month that he had no improvement in his pain (A.R. 1626). Plaintiff also reported from March through May of 2016 either that Norco and Lidocaine patches were controlling his pain or that he was stable on his medications (A.R. 1426, 1556, 1560). However, any relief Plaintiff reportedly experienced appears to have been only temporary since Plaintiff reported radiating neck and back pain not relieved by medications from June of 2016 onward (A.R. 1554, 1826, 1836, 1839, 1842, 1846, 2070, 2114).

'conservative' or in conflict with Plaintiff's pain testimony");
Aguilar v. Colvin, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014)
("It would be difficult to fault Plaintiff for overly conservative
treatment when he has been prescribed strong narcotic pain
medications"); Christie v. Astrue, 2011 WL 4368189, at *4 (C.D. Cal.
Sept. 16, 2011) (refusing to characterize as "conservative" treatment
including use of narcotic pain medication and epidural injections).

With regard to the third stated reason, inconsistencies between
admitted activities and claimed incapacity properly may impugn the
accuracy of a claimant's testimony and statements under certain
circumstances. See, e.g., Thune v. Astrue, 499 Fed. App'x 701, 703
(9th Cir. 2012) (ALJ properly discredited pain allegations as
contradicting claimant's testimony that she gardened, cleaned, cooked,
and ran errands); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th
Cir. 2008) (claimant's "normal activities of daily living, including
cooking, house cleaning, doing laundry, and helping her husband in
managing finances" provided sufficient explanation for discounting
claimant's testimony). Yet, it is difficult to reconcile Ninth
Circuit opinions discussing when a claimant's admitted activities may
and may not justify a discounting of the claimant's testimony and
statements. Compare Stubbs-Danielson v. Astrue with Vertigan v.
Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) ("the mere fact that a
plaintiff has carried on certain daily activities, such as grocery
shopping, driving a car, or limited walking for exercise, does not in
any way detract from her credibility as to her overall disability");
see also Diedrich v. Berryhill, 874 F.3d 634, 642-43 (9th Cir. 2017)
(daily activities of cooking, cleaning, vacuuming, washing dishes,

shopping and cleaning a cat's litter box insufficient to discount the
claimant's subjective complaints).

Contrary to the ALJ's stated findings in the present case,
Plaintiff's admitted activities of taking short daily walks, using
public transportation, shopping for 10 to 15 minutes a day for food,
and making "ready made" meals when he is not homeless, do not properly
undermine Plaintiff's subjective complaints. See Revels v. Berryhill,
874 F.3d 648, 667-68 (9th Cir. 2017) (ALJ erred in finding disparity
between claimant's reported activities and symptom testimony where the
claimant indicated she could use the bathroom, brush her teeth, wash
her face, take her children to school, wash dishes, do laundry, sweep,
mop, vacuum, go to doctor's appointments, visit her mother and father,
cook, shop, get gas, and feed her dogs; ALJ failed to acknowledge the
claimant's explanation, consistent with her symptom testimony, that
she could complete only some tasks in a single day and regularly
needed to take breaks). There is no material inconsistency between
Plaintiff's admitted activities and Plaintiff's claimed incapacity.

With regard to the first and fourth stated reasons, asserted
inconsistencies between a claimant's subjective complaints and the
objective medical evidence can be a factor in discounting a claimant's
subjective complaints, but cannot "form the sole basis." See Burch v.
Barnhart, 400 F.3d at 681; Rollins v. Massanari, 261 F.3d 853, 857
(9th Cir. 2001). Where there is an alleged inconsistency between the
medical evidence and a claimant's subjective complaints, the ALJ must
make a specific finding identifying the testimony the ALJ finds not
credible and linking the rejected testimony to parts of the medical

record supporting the ALJ's non-credibility determination.  See
Brown-Hunter v. Colvin, 806 F.3d at 494 (holding it was legal error
for ALJ to fail to make such a link) (citations omitted).


    Here, the ALJ stated that, although Plaintiff complained he had
limited ambulation and used a cane, several examinations reportedly
noted a normal gait and station, and full motor strength and intact
sensation in the lower extremities (A.R. 474).  The ALJ also stated
that, although Plaintiff complained of memory loss, Plaintiff's mental
status examinations "did not demonstrate cognitive deficits" (A.R.
474-75).  These isolated findings do not accurately capture the tenor
of the medical record as a whole, which also includes findings of
lumbar radiculopathy (A.R. 403, 1432, 1434, 1436-37), lumbar stenosis
(A.R. 361-62, 1148-49, 1521, 1775), mild leg weakness (A.R. 945), and
fibromyalgia (signs and symptoms of which include "cognitive or memory
problems" and "muscle weakness"; see SSR 12-2p at *3 & n.9 (discussing
fibromyalgia diagnostic criteria)) (A.R. 1775), and assessment of
memory loss and possible mild neurocognitive disorder based in part on
Plaintiff's brain MRI (A.R. 2000-01).  In any event, the isolated
findings cited by the ALJ are not inconsistent with Plaintiff's
claimed problems with balancing and walking limitations.  The ALJ's
findings are not a legally sufficient reason to discount Plaintiff's
subjective complaints.  See, e.g., Cash v. Berryhill, 2018 WL 571940,
at *8-11 (S.D. Cal. Jan. 26, 2018), adopted, 2018 WL 1101087 (S.D.
Cal. Feb. 26, 2018) (finding ALJ erred in failing to articulate
consideration of fibromyalgia's unique symptoms in concluding evidence
undermined Plaintiff's statements alleging disabling pain and weakness
and memory problems); see generally Revels v. Berryhill, 874 F.3d at

656-57 (explaining that those suffering from fibromyalgia have muscle strength, sensory functions, and reflexes that are normal, and experience symptoms including widespread pain and cognitive or memory problems that "wax and wane"); Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement . . . and to treat them as a basis for concluding a claimant is capable of working.") (citing Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001).

Defendant cites to: (1) Dr. Yashruti's observation that Plaintiff declined to walk on his toes, heels or squat, and declined other physical testing – where Dr. Yashruti had found no orthopedic evidence to justify Plaintiff's movements (without reviewing Plaintiff's lumbar spine CT scan showing degeneration) (A.R. 346-50);[11] and (2) asserted absence from the record of a prescription for a cane (but see A.R. 1690, 1693 (Dr. Kim's record noting that the pharmacy had ordered a large handle cane for Plaintiff)). Defendant argues that Plaintiff's asserted lack of cooperation with Dr. Yashruti and "self-prescription" of his cane are reasons to discount Plaintiff's subjective statements. See Defendant's Motion, pp. 3-4. Because the ALJ did not specify such matters as reasons to discount Plaintiff's credibility (see A.R. 473-

_____

[11] The ALJ discounted Dr. Yashruti's opinion that Plaintiff was capable of performing medium work as not consistent with the medical record as a whole or more recent diagnostic studies (A.R. 475).

75), the Court cannot uphold the credibility determination on the basis of such considerations.  <u>See</u> <u>Pinto v. Massanari</u>, 249 F.3d 840, 847 (9th Cir. 2001) (the court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").

The Court is unable to conclude that the ALJ's failure to state legally sufficient reasons for discounting Plaintiff's credibility was harmless.  "[A]n ALJ's error is harmless where it is inconsequential to the ultimate non-disability determination."  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations and quotations omitted). Here, the vocational expert testified that, if someone were off task 20 percent of the work day, there would be no jobs the person could perform (A.R. 583).  The vocational expert did not testify there are jobs performable by a person as limited as Plaintiff claims to be (A.R. 577-92).

## IV.  <u>The ALJ Also Erred in Evaluating the Medical Evidence.</u>

In determining Plaintiff's residual functional capacity, the ALJ summarized: (1) Dr. Raju's January, 2015 "Medical Assessment of Ability to Do Work-Related Activities (Physical)" form finding Plaintiff capable of performing a limited range of light work (A.R. 448-51); and (2) Dr. Raju's September, 2014 General Relief "Report of Examination" form, indicating that Plaintiff is unsuitable for any employment and limited to "no lifting, prolonged sitting or walking" (A.R. 414).  <u>See</u> A.R. 475.  The ALJ gave the "least weight" to Dr. Raju's opinions, which the ALJ described as finding Plaintiff "capable

of less than sedentary exertional work," reasoning:

> Although Dr. Raju is a treating physician who had a treating relationship with the claimant since 2014, the findings from his examinations of the claimant were generally mild. For instance, Dr. Raju noted the claimant exhibited decreased lumbar flexion and extension due to pain, but he found he claimant was neurologically intact and observed the claimant ambulate without assistance. The undersigned has given least weight to Dr. Raju because his opinions are inconsistent and not well-supported by his objective findings.

(A.R. 475-76 (internal citations omitted)).

The vocational expert had testified that, if a person were absent two times a month there would be no jobs that person could perform (A.R. 581; see also A.R. 88-89 (vocational expert also testifying in prior administrative hearing that a person could not maintain employment if absent two days a month)). Despite this testimony and despite the Court's remand order in the Prior Action finding that the former ALJ provided insufficient reasons for rejecting Dr. Raju's opinion regarding Plaintiff's absenteeism, on remand the new ALJ did not even acknowledge Dr. Raju's opinion regarding Plaintiff's absenteeism (A.R. 475-76). This was error. See Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995) (an ALJ "may not reject 'significant probative evidence' without explanation") (quoting Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)). The "ALJ's written decision

must state reasons for disregarding [such] evidence." <u>Flores v. Shalala</u>, 49 F.3d at 571. "[A]n ALJ cannot in its [sic] decision totally ignore a treating doctor and his or her notes, without even mentioning them." <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1172-73 (9th Cir. 2015) (citing <u>Garrison v. Colvin</u>, 759 F.3d at 1012); <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) ("Of course, an ALJ cannot avoid these requirements [to state specific, legitimate reasons] by not mentioning the treating physician's opinion and making findings contrary to it."); <u>Salvadore v. Sullivan</u>, 917 F.2d 13, 15 (9th Cir. 1990) (implicit rejection of treating physician's opinion cannot satisfy Administration's obligation to set forth "specific, legitimate reasons").[12]

## V. Remand for Further Administrative Proceedings is Appropriate.

Remand is appropriate because the circumstances of this case suggest that further development of the record and further administrative review could remedy the ALJ's errors. <u>See</u> <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>see also</u> <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency

---

[12] The ALJ's reasoning that Dr. Raju's form opinions were "inconsistent" could be a specific and legitimate reason for rejecting certain of Dr. Raju's opinions. <u>See</u> <u>Batson v. Commissioner</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly gave minimal evidentiary weight to treating physician's checklist opinion that did not have supportive objective evidence, and was contradicted by other statements); <u>compare</u> A.R. 414 <u>with</u> A.R. 448-49. Even so, under the circumstances of the remand, the ALJ should have at least addressed Dr. Raju's opinion that Plaintiff would miss two days of work per month.

investigation or explanation, except in rare circumstances); <u>Leon v.</u>
<u>Berryhill</u>, 880 F.3d 1041, 1044 (9th Cir. 2017) (reversal with a
directive for the immediate calculation of benefits is a "rare and
prophylactic exception to the well-established ordinary remand rule");
<u>Dominguez v. Colvin</u>, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the
district court concludes that further administrative proceedings would
serve no useful purpose, it may not remand with a direction to provide
benefits"); <u>Treichler v. Commissioner</u>, 775 F.3d 1090, 1101 n.5 (9th
Cir. 2014) (remand for further administrative proceedings is the
proper remedy "in all but the rarest cases"); <u>Harman v. Apfel</u>, 211
F.3d 1172, 1180-81 (9th Cir.), <u>cert. denied</u>, 531 U.S. 1038 (2000)
(remand for further proceedings rather than for the immediate payment
of benefits is appropriate where there are "sufficient unanswered
questions in the record"); <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th
Cir. 2003) (remand is an option where the ALJ fails to state
sufficient reasons for rejecting a claimant's excess symptom
testimony); <u>but see</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 640 (9th Cir. 2007)
(citing <u>Connett</u> for the proposition that "[w]hen an ALJ's reasons for
rejecting the claimant's testimony are legally insufficient and it is
clear from the record that the ALJ would be required to determine the
claimant disabled if he had credited the claimant's testimony, we
remand for a calculation of benefits") (quotations omitted); <u>see also</u>
<u>Brown-Hunter v. Colvin</u>, 806 F.3d at 495-96 (discussing the narrow
circumstances in which a court will order a benefits calculation
rather than further proceedings); <u>Ghanim v. Colvin</u>, 763 F.3d 1154,
1166 (9th Cir. 2014) (remanding for further proceedings where the ALJ
failed to state sufficient reasons for deeming a claimant's testimony
not credible); <u>Vasquez v. Astrue</u>, 572 F.3d 586, 600-01 (9th Cir. 2009)

(a court need not "credit as true" improperly rejected claimant testimony where there are outstanding issues that must be resolved before a proper disability determination can be made).  There remain significant unanswered questions in the present record.[13]

Plaintiff asks that the Court direct the Administration to "credit as true" Dr. Raju's opinion that Plaintiff would be absent from work two days per month.  Ninth Circuit authorities are in conflict regarding the availability of a remedy crediting as true improperly rejected evidence when remanding for further administrative proceedings.  See Baltazar v. Berryhill, 2017 WL 2369363, at *7-9 (C.D. Cal. May 31, 2017) (and cases cited therein).  Even if available, the "credit as true" remedy would not be appropriate here. The bases for Dr. Raju's opinion should be explored on remand.  See Garrison v. Colvin, 759 F.3d at 1020 (court will credit-as-true medical opinion evidence only where, inter alia, "the record has been fully developed and further administrative proceedings would serve no useful purpose").

///
///
///
///
///
///

_____

[13]     For example, it is not clear whether the ALJ would be required to find Plaintiff disabled for the entire claimed period of disability even if Plaintiff's testimony and the treating physician's opinions were fully credited.  See Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010).

**CONCLUSION**

For all of the foregoing reasons,[14] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 15, 2019.


_____
/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[14] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.